**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose if initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

JS-44 (Rev. 03/99)

**I (a) PLAINTIFFS**
MASON JAMES YUEILL, a Minor, by MICHAEL J. YUEILL and MICHELLE L. YUEILL, Parents and Natural Guardians

**DEFENDANTS**
GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK")
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New Castle County, DE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF McHenry County, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Rosemary Pinto, Esquire
Feldman & Pinto
1604 Locust Street, 2R
Philadelphia, PA 19103
(215) 546-2604

ATTORNEYS (IF KNOWN)
Joseph E. O'Neil, Esquire
Carolyn L. McCormack, Esquire
Lavin, O'Neil, Ricci, Cedrone & DiSipio
190 N. Independence Mall West, Suite 500
6th and Race Streets
Philadelphia, PA 19106
(215) 627-0303

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury – Med Malpractice
☒ 365 Personal Injury – Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

BANKRUPTCY
☐ 442 Appeal 28 USC 158
☐ 423 Withdrawl 28 USC 157

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 861 HIA (139ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS – Third Party 26 USC 7609

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Arts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus:
☐ 520 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Other

**V. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Diversity case under 28. U.S.C. §1332, Plaintiff alleges injury as a result of use of pharmaceutical product manufactured by Defendant.

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ From the injuries described in the Complaint, in excess of $75,000.00
Check YES only if demanded in complaint:
JURY DEMAND ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** N/A (See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE 4/27/11
SIGNATURE OF ATTORNEY OF RECORD
JOSEPH E. O'NEIL / CAROLYN L. MCCORMACK

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA—DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignation to appropriate calendar.

Address of Plaintiff:  3007 Green Meadow Lane, Cary, IN 60013

Address of Defendant:  1105 North Market Street, Suite 1300, Wilmington, DE 19801

Place of Accident, incident or Transaction:  Cary, IN

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more or more of its stock?.

(attach two copies of the Disclosure Statement Form in accordance with the Fed.R.Civ.P.7.1.(a)   Yes ☐   No. ☒

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☒

RELATED CASE IF ANY

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when "yes" is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil case filed by the same individual?   Yes ☐   No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act—Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify _____ )

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify): Negligence
7. ☒ Products Liability
8. ☐ Products Liability—Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate category)*

I, Joseph E. O'Neil, Esquire   counsel of record, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☐ Relief other than monetary damages is sought.

DATE: 4/27/11   *(signature)* JOSEPH E. O'NEIL   *Attorney-at-Law*   29053   *Attorney ID#*

**NOTE:**   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/27/11   *(signature)* JOSEPH E. O'NEIL   *Attorney-at-Law*   29053   *Attorney ID#*

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA—DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignation to appropriate calendar.**

Address of Plaintiff:  3007 Green Meadow Lane, Cary, IN 60013

Address of Defendant:  1105 North Market Street, Suite 1300, Wilmington, DE 19801

Place of Accident, incident or Transaction:  Cary, IN

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more or more of its stock?.

(attach two copies of the Disclosure Statement Form in accordance with the Fed.R.Civ.P.7.1.(a)    Yes ☐    No. ☒

Does this case involve multidistrict litigation possibilities?    Yes ☐    No ☒

RELATED CASE IF ANY

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when "yes" is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes ☐    No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil case filed by the same individual?    Yes ☐    No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act—Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify _____)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify): Negligence
7. ☒ Products Liability
8. ☐ Products Liability—Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate category)*

I, Joseph E. O'Neil, Esquire    counsel of record, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☐ Relief other than monetary damages is sought.

DATE: 4/27/11    *Joseph E O'Neil*    29053

JOSEPH E. O'NEIL    *Attorney-at-Law*    *Attorney ID#*

**NOTE:**    A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/27/11    *Joseph E O'Neil*    29053

JOSEPH E. O'NEIL    *Attorney-at-Law*    *Attorney ID#*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| MASON JAMES YUEILL, A MINOR BY MICHAEL J. YUEILL AND MICHELLE L. YUEILL, PARENTS AND NATURAL GUARDIANS | : |
| Plaintiffs | :    No. |
| v. | : |
| | : |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : |
| Defendant | : |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS**

(a)    Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ☐

(b)    Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ☐

(c)    Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ☐

(d)    Asbestos—Cases involving claims for personal injury or property damage from exposure to asbestos. ☐

(e)    Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ☐

(f)    Standard Management – Cases that do not fall into any one of the other tracks. ☒

GlaxoSmithKline LLC formerly
SmithKline Beecham
Corporation, d/b/a
GlaxoSmithKline ("GSK")
Attorney for Defendant

4/27/11
Date

_Joseph E. O'Neil, Esquire_
Joseph E. O'Neil, Esquire
Carolyn L. McCormack, Esquire

joneil@lavin-law.com
cmccormack@lavin-law.com
E-mail Address

(215) 627-0303
Telephone

(215) 627-2551
Fax Number

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MASON JAMES YUEILL, a Minor, by   : <br> MICHAEL J. YUEILL and MICHELLE   : <br> L. YUEILL, as Parents and Natural   : <br> Guardians,   : <br>            : <br> **Plaintiffs,**   : <br>            : <br> **vs.**   : <br>            : <br> SMITHKLINE BEECHAM   : <br> CORPORATION d/b/a   : <br> GLAXOSMITHKLINE   : <br>            : <br> **Defendant.**   : <br>            : | **Civil Action No.:** |

## NOTICE OF REMOVAL

Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), named defendant in the above-captioned matter, pursuant to 28 U.S.C. §§ 1441 and 1446, hereby removes this case from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania, respectfully showing as follows:

1.

On or about March 28, 2011, Plaintiffs Mason James Yueill, Michael J. Yueill, and Michelle L. Yueill ("Plaintiffs") filed a Civil Action Short-Form Complaint ("Short-Form Complaint") in the consolidated Paxil Pregnancy litigation before the Honorable Sandra Mazer Moss in the Philadelphia Court of Common Pleas Mass Tort Program, In re Paxil Pregnancy Cases, February Term 2007, No. 3220 ("Paxil Pregnancy MTP").[1]

---

[1] Pursuant to Case Management Order No. 1 in the Paxil Pregnancy MTP, all newly filed cases in the Philadelphia Court of Common Pleas are initiated by the filing of a Short-Form Complaint, which incorporates by reference the Plaintiffs' General Master Long-Form Complaint ("Long-Form Complaint"), filed on March 7, 2007. (See Long-

2.

Plaintiffs' Short-Form Complaint initiated the civil action styled <u>Yueill v. SmithKline</u> <u>Beecham Corporation d/b/a GlaxoSmithKline</u>, March Term 2011, No. 2925.

3.

GSK was served with Plaintiffs' Short-Form Complaint on March 28, 2011.

4.

Accordingly, this Notice is timely as it was filed within thirty (30) days after service of the Short-Form Complaint that initiated Plaintiffs' lawsuit against GSK and within one year of the filing of the Short-Form Complaint.

5.

Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process and pleadings served on GSK are attached hereto as Exhibit "B," which is incorporated herein by reference.

6.

The Short-Form Complaint asserts claims predicated on Plaintiff Michelle L. Yueill's alleged use of Paxil® CR, paroxetine hydrochloride ("Paxil"), a prescription medication manufactured by GSK and approved by the United States Food and Drug Administration ("FDA").

7.

By filing this Notice of Removal, GSK does not waive any jurisdictional or other defenses that might be available to it.

8.

As explained below, this Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, and the action may be removed to this Court under 28

---

Form Complaint, ¶ 1) (attached as Exhibit A).

U.S.C. §1441 because there is complete diversity of citizenship between Plaintiffs and GSK, and

the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

<u>**DIVERSITY OF CITIZENSHIP**</u>

9.

On October 27, 2009, SmithKline Beecham Corporation ("SKB"), a Pennsylvania

corporation, converted into GlaxoSmithKline LLC, a limited liability company organized under

Delaware law.

10.

In order to clarify its status in Pennsylvania (<u>i.e.</u>, no longer having the status as a

Pennsylvania corporation), SKB filed modified articles of dissolution with the Pennsylvania

Department of State pursuant to 15 Pa. Cons. § 1980.[2]

11.

The articles of dissolution terminated SKB's status as a domestic business corporation

under Pennsylvania law, and the entity continued to exist as GlaxoSmithKline LLC under

Delaware law.  As the successor entity, GlaxoSmithKline LLC succeeded to liability of SKB.

12.

For purposes of diversity jurisdiction, the citizenship of an LLC is that of its members.

<u>Zambelli Fireworks Mfg. Co. v. Wood</u>, 592 F.3d 412, 420 (3d Cir. 2010).

---

[2] As explained in the official commentary to Section 1980, this filing did not cause an actual dissolution of SKB, but
rather simply confirmed its change in status: "This section [1980] is intended to provide a procedure under which a
domestic business corporation that has domesticated itself under the laws of another jurisdiction can clarify its status
in Pennsylvania. . . . The effect of filing under this section is not to dissolve the corporation in the ordinary sense but
simply to terminate its status as a domestic business corporation.  The existence of the corporation is not affected
because the same entity continues to exist in the new jurisdiction of incorporation."  As such, SKB's articles of
dissolution noted, "SmithKline Beecham Corporation is being domesticated to Delaware and subsequently
converted to a Delaware Limited Liability Company under Delaware and Pennsylvania law."

13.

The sole member of GSK is GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"). GSK Holdings is a Delaware corporation with its principal place of business in Wilmington, Delaware. White v. SmithKline Beecham Corp., 2:10-cv-2241, 2010 U.S. Dist. LEXIS 79520, *8-9 (E.D. Pa. Aug. 5, 2010) (holding that GSK is a citizen of Delaware because GSK Holdings is a Delaware corporation whose principal place of business is located in Delaware, and denying plaintiff's motion to remand the action brought against GSK in the Philadelphia Court of Common Pleas); Hoch v. Eli Lilly & Co., 736 F. Supp. 2d 219, 221 (D.D.C. 2010) (concluding that GSK is a citizen of Delaware); but cf. Brewer v. SmithKline Beecham Corp., No. 10-4443, 2011 WL 1103627 (E.D. Pa. Mar. 24, 2011) (concluding that GSK is a citizen of Pennsylvania). [3]

14.

GSK respectfully submits that removal is proper because of the split of authority in this district and because of the absence of any controlling Third Circuit precedent. In Hertz -- which, like Zambelli, was decided after GSK converted into a Delaware LLC, and therefore had no bearing on GSK's corporate changes -- the Supreme Court announced a simple, easily applied jurisdictional test for determining a corporation's "principal place of business." See Hertz, 130 S. Ct. at 1193 (discussing simplicity and predictability as admirable traits in a jurisdictional rule). In Brewer, the court applied a novel, complex test based on an incorrect premise – namely, that

---

[3] Prior to the White decision, another court in this District reached a contrary result. See Monroe v. SmithKline Beecham Corp., 2:10-cv-2140, 2010 U.S. Dist. LEXIS 63626 (E.D. Pa. June 23, 2010). GSK requested that the Monroe court reconsider and vacate its Order, as it was signed five days before GSK's response was due -- without the benefit of GSK's opposition papers. The court has since recognized that the case was improperly remanded because plaintiffs' Motion to Remand was untimely filed. See Monroe, 2:10-cv-2140, slip op. at 1 (July 20, 2010) (attached as Exhibit C.) The Monroe court's now-vacated remand order should have no authoritative value in this case.

GSK Holdings had "delegated" to the LLC's officers and directors its right to manage and control the business of GSK LLC.  Brewer, 2011 WL 1103627, at *14-16.[4]

<div align="center">15.</div>

Under the well-settled test for LLC citizenship, the Brewer court should have looked solely to the citizenship of the LLC's member, GSK Holdings, not to the nerve center of the LLC itself.  The Brewer court also disregarded the corporate form without any justification for "piercing the corporate veil" and failed to base its citizenship determination on the entity in question, even though corporate formalities had been maintained.  Further, to the extent the Brewer court purported to apply an unmodified "nerve center" test to GSK Holdings, it did not faithfully apply Hertz.  Instead of trying to identify the place from which the directors and officers actually direct and control the activities of GSK Holdings, the court focused on post-removal conduct and business activities that have no relevance under Hertz's nerve center test.  (See also In re Avandia Marketing, Sales Practices and Prods. Liability Litig., GlaxoSmithKline LLC's Supplemental Memorandum in Opposition to Plaintiffs' Motions to Remand, (attached as Exhibit D) (responding to Brewer opinion and further explaining why GSK is a citizen of Delaware under well-settled law).)

<div align="center">16.</div>

GSK Holdings is a holding company, not an operating company.  GSK Holdings' nerve center is located in Wilmington, Delaware, because its limited activities as a holding company are directed, controlled, and coordinated at meetings of its board of directors in Wilmington.  See

---

[4] GSK was formed as a manager-managed LLC by its operating agreement pursuant to Delaware law.  Del. Code Ann. tit. 6, § 18-402.  That law contemplates this structure and states that if an LLC agreement "provides for the management . . . of a [LLC] by a manager, the management of the [LLC], to the extent so provided, shall be vested in the manager."  Id. (emphasis added).  Thus, under Section 18-402, the original authority to manage GSK was vested in the managers of GSK.  GSK Holdings, as the member of a manager-managed LLC, did not have the authority to manage the LLC, but instead, had the right to appoint and remove GSK's managers.  Because GSK Holdings did not have the right to manage GSK's business, it could not have delegated that right.

<div align="center">5</div>

White, 2010 U.S. Dist. LEXIS 79520, at *8-9; Hoch, 736 F. Supp. 2d at 221.  Because GSK Holdings is a Delaware corporation with its principal place of business located in Delaware, GSK Holdings is a citizen of Delaware.  Because GSK Holdings is a citizen of Delaware, so too is GSK.

<div align="center">17.</div>

GSK is a citizen of Delaware and was not at the time of the commencement of this action or at any time thereafter a citizen of the State of Illinois.

<div align="center">18.</div>

At the time this action was commenced, Plaintiffs were citizens and residents of the State of Illinois.  (Short-Form Complaint, ¶ 2.)

<div align="center">19.</div>

Therefore, complete diversity of citizenship exists between Plaintiffs and Defendant GSK.

<div align="center">**RESIDENT-DEFENDANT RULE**</div>

<div align="center">20.</div>

Removal of this action is not barred by the resident-defendant rule set forth in 28 U.S.C. § 1441(b) because GSK is not a citizen of Pennsylvania (the state in which this action was brought), but rather is a citizen of Delaware.

<div align="center">**AMOUNT-IN-CONTROVERSY**</div>

<div align="center">21.</div>

Plaintiffs assert claims against GSK under the following sixteen (16) theories: (1) breach of express warranty; (2) breach of implied warranty; (3) fraud; (4) intentional infliction of emotional distress; (5) loss of consortium; (6) negligence; (7) negligence *per se*; (8) negligent

pharmacovigilance; (9) failure to warn; (10) negligent misrepresentation; (11) punitive damages;

(12) strict products liability; (13) "violation of Pennsylvania's Unfair Trade Practice and

Consumer Protection Law"; (14) loss of income; (15) medical expenses; and (16) design defect.

Each cause of action seeks damages for injuries allegedly caused by ingestion of Paxil. (Short-

Form Complaint, ¶ 7.)

22.

The Short-Form Complaint alleges that Plaintiff Michelle L. Yueill took Paxil while she

was pregnant with Mason James Yueill. (See Short-Form Complaint, ¶ 3.)

23.

The Plaintiffs allege that Plaintiff Michelle L. Yueill's ingestion of Paxil CR caused

Plaintiff Mason James Yueill to be born with a bicuspid aortic valve, pulmonary stenosis and

"other congenital malformations and conditions." (See Short-Form Complaint, ¶ 5.)

24.

Plaintiffs selected "More than $50,000" as the amount-in-controversy on the Civil Cover

Sheet filed with their Short-Form Complaint. Where a complaint does not limit its request to a

precise monetary amount, the district court makes "an independent appraisal of the value of the

claim." Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993). In such a case, the party

seeking removal need only demonstrate by a preponderance of the evidence that the amount-in-

controversy exceeds $75,000.00. Frederico v. Home Depot, 507 F.3d 188, 194-96 (3d Cir.

2007). The amount-in-controversy may be evidenced by demonstrating that the claims, as

asserted in the plaintiff's complaint, are likely above the jurisdictional minimum. See id. at 197.

25.

Claims similar to those asserted by Plaintiffs have been held to establish, on their face, that the amount-in-controversy exceeds the jurisdictional requirement. See, e.g., Masterson v. Apotex Corp., 07-61665-CIV, 2008 WL 2047979, *3 (S.D. Fla. May 13, 2008) (in case alleging birth defects caused by generic paroxetine, court concluded that sufficient evidence existed that the amount-in-controversy exceeded $75,000 based upon allegations in complaint of congenital birth defects and "pain and suffering, mental anguish, embarrassment, humiliation, disfigurement, loss of enjoyment of the pleasure of life, as well as past and future general and specific damages, including future medical care" arising from the birth defects); Phillips v. Severn Trent Envtl. Servs., Inc., No. 07-3889, 2007 WL 2757131, *2 (E.D. La. Sept. 19, 2007) (amount-in-controversy requirement of $5 million, per CAFA, met in class action based upon size of class and "categories of serious damages", including birth defects, mental anguish, and present and future medical expenses); see also Varzally v. Sears, Robuck & Co., 09-CV-6137, 2010 WL 3212482, *2 (E.D. Pa. July 30, 2010) (allegations in product liability complaint met amount-in-controversy requirement because a "reasonable reading of plaintiff's claims suggests that he could recover in excess of $75,000 for damages sustained as a result of ongoing 'medical problems'").

26.

In other cases involving allegations of congenital defects, juries in Pennsylvania and other jurisdictions nationwide have awarded plaintiffs in excess of $75,000 in damages. See, e.g., White v. Behlke, No. 03 CV 2663 (Pa. Com. Pl., 45th Judicial Dist., Lackawanna Co. Nov. 17, 2008) (awarding $20.5 million in damages for birth defects caused by defendant doctor's malpractice); see also Estrada v. Univ. of South Fla. Board of Trustees, No. 06-CA-000625 (Fla.

Cir., Hillsborough Co. July 23, 2007) (awarding $23.55 million in damages as a result of a doctor's malpractice that resulted in plaintiff's child being born with birth defects); McCarell v. Hoffman-LaRoche Inc., No. ATL-L-1951-03-MT (N.J. Super., Atlantic Co., May 29, 2007) (awarding $2.619 million as a result of the defendant manufacturer's alleged failure to adequately warn about the risk of birth defects associated with its acne drug); Lindstrom v. Han, No. 1994-L-013821 (Ill. Cir., Cook Cnty. March 20, 2000) (awarding $4,502,312 verdict for doctor's negligent treatment of plaintiff during the first trimester of pregnancy, which caused child to be born with a birth defect); Tobin v. Astra Pharmaceutical, Inc., No. 88-0350-L(CS) (D. Ky. March 8, 1991) (awarding $4,508,399 to compensate plaintiff for congestive heart failure and heart transplant allegedly caused by use of defendant's prescription medication during pregnancy).

<p style="text-align:center">27.</p>

Given the nature and extent of Plaintiffs' injuries and damages as alleged in the Short-Form Complaint, the amount-in-controversy exceeds $75,000.00, exclusive of interests and costs. See Angus, 989 F.2d at 146 ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."); State Farm Mut., Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg, 543 F. Supp. 2d 424, 432 n.5 (E.D. Pa. 2008) (same).

<p style="text-align:center">**PROPRIETY OF REMOVAL**</p>

<p style="text-align:center">28.</p>

This Court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Removal of this action to this Court is not barred by the resident-defendant rule set forth in 28 U.S.C. § 1441(b), as GSK is not a citizen of Pennsylvania.

<p style="text-align:center">9</p>

29.

The United States District Court for the Eastern District of Pennsylvania is the federal judicial district encompassing the Court of Common Pleas of Philadelphia County, Pennsylvania, where Plaintiffs originally filed this suit such that this is the proper federal district for removal of this case to federal court. See 28 U.S.C. § 1441(a).

30.

Accordingly, the present lawsuit may be removed from the Court of Common Pleas of Philadelphia County, Pennsylvania, and brought before the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

31.

Pursuant to 28 U.S.C. § 1446(d), GSK will promptly file a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, and will serve a copy of same upon counsel for Plaintiffs.

32.

GSK reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, GSK prays that this Notice of Removal be filed; that said action bearing March 2011 Term, Case No. 2925, from the Court of Common Pleas of Philadelphia County, Pennsylvania, be removed to and proceed in this Court; and that no further proceedings be had in said case in the Court of Common Pleas of Philadelphia County, Pennsylvania.

This 27th day of April, 2011.

Respectfully submitted,

LAVIN O'NEIL RICCI CEDRONE & DISIPIO

By: _Joseph E O'Neil_

Joseph E. O'Neil, Esquire (ID No. 29053)
Carolyn L. McCormack, Esquire (ID No. 87800)
Suite 500
190 North Independence Mall West
6th & Race Street
Philadelphia, PA 19106
(215) 627-0303
(215) 627-2551 (facsimile)

Attorneys for Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a GlaxoSmithKline

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the foregoing **NOTICE OF REMOVAL** by depositing a copy of the same in the U.S. Mail, first-class, postage prepaid, and addressed as follows:

Feldman & Pinto
Rosemary Pinto, Esquire
1604 Locust Street, 2R
Philadelphia, PA 19103

Motley Rice LLC
Fred Thompson, III, Esquire
Kimberly D. Barone Baden, Esquire
Adrian W. Broome, Esquire
28 Bridgeside Boulevard
Mount Pleasant, SC 29464

**Counsel for Plaintiffs**

This 27th day of April, 2011.

Joseph E. O'Neil

# Exhibit A

03/07/07   17:35 FAX 215 751 5139          GlaxoSmithKline Legal    → KAREN KARPINSKI    ☑001

*HAND SERVED Lobby*
*March 7, 2007*
*B. Weber*                    *4:20 pm*

003220

Court of Common Pleas of Philadelphia County
Trial Division

## Civil Cover Sheet    *FEE PAID*    FEBRUARY 2007

| | |
|---|---|
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| IN RE: PAXIL PREGNANCY CASES | SmithKline Beecham Corporation |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | One Franklin Plaza |
| | Philadelphia          PA      19102-1225 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| | 1 | ☑ Complaint | ☐ Petition Action | ☐ Notice of Appeal |
| | | ☐ Writ of Summons | ☐ Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | | |
|---|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☑ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☑ More than $50,000.00 | ☑ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

**CASE TYPE AND CODE (SEE INSTRUCTIONS)**

Paxil MTP TK

**STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)**

None

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|---|
| | Yes | No |
| | ☐ | ☐ |
| February 2007 Master Docket No. 3220 | ☐ | ☐ |
| | ☐ | ☐ |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Cara J. Luther, Esq. (Baum Hedlund, APC) | 1600 Market Street, 12th Floor, East Tower |
| | Philadelphia          PA      19102-2107 |
| **PHONE NUMBER**          **FAX NUMBER** | **E-MAIL ADDRESS** |
| (215) 806-5659          (215) 569-8228 | cluther@baumhedlundlaw.com |
| **SUPREME COURT IDENTIFICATION NO.** | **DATE** |
| 52545 | March 5, 2007 |
| **SIGNATURE** | |
| *Cara J. Luther* | |

Ronald L.M. Goldman, Esq.
Karen Barth Menzies, Esq.
Jennifer R. Liakos, Esq.
Baum + Hedlund, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
Telephone: 310.207.3233
Facsimile: 310.207.4204

Cara J. Luther, Esq. (52545)
Baum + Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

**ATTEST**

MAR   7 2007

M. SIMMONS
PRO. PROTHY

**This is not an arbitration matter.
Assessment of damages hearing is
required**

*Attorneys for Plaintiffs*

| | |
|---|---|
| | :    **COURT OF COMMON PLEAS** |
| | :    **TRIAL DIVISION** |
| | :    **OF PHILADELPHIA COUNTY** |
| | : |
| | : |
| **IN RE: PAXIL PREGNANCY CASES** | :    **FEBRUARY TERM, 2007** |
| | : |
| | :    **MASTER DOCKET NO. 3220** |
| | : |
| | : |
| | :    **JURY TRIAL DEMANDED** |

**Notice To Defend**

| **NOTICE** | **AVISO** |
|---|---|
| YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | USTED HA SIDO DEMANDAMO/A EN LA CORTE. Si usted desea defender contra las demandas puestas en las siguientes páginas, usted tiene que tomar acción dentro de veinte (20) días después que esta demanda y Aviso es servido, con entrando por escrito una experiencia personalmente ó por un abogado y archivando por escrito con la Corte sus defensas o objeciones a las demandas puestas en contra usted. Usted es advertido que si falla de hacerlo el caso puede proceder sin usted y una sentencia puede ser entrado contra usted por la Corte sin más aviso por cualquier dinero reclamado en la Demanda o por cualquier otro reclamo o alivio solicitado por el Demandante. Usted puede perder dinero o propiedad o otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VIYA EN PERSONA OR LLAME POR TELEFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| Lawyer Referral and Information Service<br>Philadelphia Bar Association<br>1101 Market Street — 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-1701 | ASOCIACIÓN DE LICENCIADOS DE FILADELFIA<br>SERVICIO DE REFERENCIA E INFORMACIÓN LEGAL<br>1101 Market Street — 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-1701 |

03/07/07   17:36 FAX 215 751 5139        GlaxoSmithKline Legal    → KAREN KARPINSKI    @003

Ronald L.M. Goldman, Esq.
rgoldman@baumhedlundlaw.com
Karen Barth Menzies, Esq.
kbmenzies@baumhedlundlaw.com
Jennifer R. Liakos, Esq.
Jliakos@baumhedlundlaw.com
Baum ♦ Hedlund, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
Telephone:  310.207.3233
Facsimile:  310.207.4204

Cara J. Luther, Esq.
cluther@baumhedlundlaw.com
Attorney ID # 52545
Baum ♦ Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

Attorneys for Plaintiffs

|  |  |
|---|---|
| IN RE: PAXIL PREGNANCY CASES | COURT OF COMMON PLEAS PHILADELPHIA COUNTY FEBRUARY TERM, 2007 MASTER DOCKET NO.: 3220 PLAINTIFFS' GENERAL MASTER LONG-FORM COMPLAINT, AND JURY DEMAND |

Pursuant to an Order by the Honorable Paul P. Panepinto, the undersigned attorneys for plaintiffs in the "Paxil Pregnancy" actions bring this Master General Long-Form Complaint against the defendant, SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline (hereinafter "GSK").

## PLAINTIFFS

1.      Pursuant to the Order of this Court, this Complaint is a Master Complaint filed for all plaintiffs in the "Paxil Pregnancy Cases." All allegations pleaded herein are deemed pleaded in any "Short-Form" Complaint hereafter filed.

1

2.     The "Infant Plaintiffs" or "Decedents" referred to herein are minor children who were born with congenital birth defects, heart defects, PPHN and/or other related conditions or who suffered from various pulmonary disorders as a result of their mothers, ("Mother Plaintiffs") taking Paxil during their pregnancies. The Infant Plaintiffs are represented in these actions by their parents, ("Parent Plaintiffs") who are their next of friend pursuant to Pa. R.C.P. No 2026.

3.     The "Mother Plaintiffs" referred to herein are competent adults and the mothers of the Infant Plaintiffs or Decedents in these actions.  They bring these actions individually and on behalf of their minor children or as the Personal Representative of the estate of their deceased infant children to recover medical and other expenses related to treatment resulting from their child's birth defect, disorder and/or related illnesses and general and special damages.

4.     The "Father Plaintiffs" referred to herein are competent adults and the fathers of the Infant Plaintiffs or Decedents in these actions.  They bring these actions individually and on behalf of their minor children or as the Personal Representative of the estate of their deceased infant children to recover medical and other expenses relating to treatment resulting from their child's birth defect, disorder and/or related illnesses and general and special damages.

5.     "Plaintiffs" as used herein refers to the Infant Plaintiffs, Mother Plaintiffs and Father Plaintiffs collectively.

## DEFENDANT

6.     Defendant GSK was and still is a corporation duly existing under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. At all times, defendant GSK was, and still is, a pharmaceutical company involved in research, development, testing, manufacture, production, promotion, distribution, and marketing of pharmaceuticals for distribution, sale, and use by the general public throughout the United States, including the drug Paxil (known generically as paroxetine), an antidepressant.

2

## JURISDICTIONAL ALLEGATIONS

7.    Jurisdiction is proper because GSK is a Pennsylvania corporation.  Venue is proper in this District because GSK resides in this county for venue purposes and a substantial part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District.  *See* Pa.R.C.P. 2179, as amended by 2003 Pennsylvania Court Order 8.

## GENERAL ALLEGATIONS

8.    The drug "paroxetine" is manufactured, promoted, distributed, labeled and marketed by GSK under the trade name Paxil, Paxil Oral Suspension, and Paxil CR (hereinafter "Paxil"), and is a member of a class of drugs known as "selective serotonin reuptake inhibitors" or "SSRIs." Paxil was first approved for use in the United States by the FDA in 1992 for the treatment of depression in adults.

9.    The Mother Plaintiffs took Paxil as prescribed by their treating physicians while pregnant.

10.    When the Infant Plaintiffs were born they were suffering from life-threatening congenital defects and/or began to suffer from persistent pulmonary hypertension of the newborn ("PPHN"), a life-threatening disorder in which the newborn's arteries to the lungs remain constricted after delivery, limiting the amount of blood flow to the lungs and therefore the amount of oxygen into the bloodstream, or began to suffer from a similar life-threatening pulmonary condition.

11.    The defects suffered by the Infant Plaintiffs were a direct result of his/her mother's ingestion of Paxil during her pregnancy in a manner and dosage recommended and prescribed by her doctor.

12.    Prior to the Mother Plaintiffs becoming pregnant, GSK knew or should have known that children were being born with congenital birth defects, heart defects, PPHN and other related conditions to women who took Paxil during pregnancy.

13.    Prior to the Mother Plaintiffs becoming pregnant, GSK knew or should have known that taking Paxil during pregnancy poses risks to the developing fetus.  GSK knew or should have

3

known that Paxil crosses the placenta, which could have important implications for the developing fetus.

14.   Prior to the time that the Mother Plaintiffs ingested Paxil during their pregnancy, GSK knew or should have known that Paxil posed an increased risk of congenital birth defects, heart defects, PPHN and other related conditions.

15.   During the entire time Paxil has been on the market in the United States, FDA regulations have required GSK to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and Paxil. The regulations specifically state that a causal link need not have been proven to issue the new warnings. Further, the regulations explicitly allowed GSK to issue such a warning without prior FDA approval.

16.   Thus, prior to the Mother Plaintiffs' pregnancies, GSK had the knowledge, the means and the duty to provide the medical community and the consuming public with a stronger warning regarding the association between Paxil and congenital birth defects, heart defects, PPHN and other related conditions, through all means necessary including but not limited to labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements and promotional materials, etc. GSK breached this duty.

17.   Plaintiffs filed this lawsuit within the applicable limitations period of first suspecting that said drugs were the cause of Plaintiffs' injuries and/or Decedent's death. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Paxil-induced injuries and deaths at an earlier time because at the time of the these injuries and/or deaths the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries and/or deaths, or the tortious nature of the conduct causing these injuries and deaths, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiffs were prevented from discovering this information sooner because the Defendant herein misrepresented and continue to misrepresent to the public and to the medical profession that the

4

drugs are safe to take during pregnancy and Defendant has fraudulently concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

## COUNT I

### NEGLIGENCE & NEGLIGENCE PER SE

18.     Plaintiffs repeat and reiterate the allegations set forth above.

19.     At all times mentioned herein, GSK was under a duty to exercise reasonable care in researching, manufacturing, selling, merchandising, advertising, marketing, promoting, labeling, testing, distributing and analyzing Paxil to ensure that Paxil's use did not result in avoidable injuries.

20.     Plaintiffs' injuries as described herein were caused by the negligence and misrepresentations of GSK though its agents, servants and/or employees acting within the course and scope of their employment including among other things:

(a)     Carelessly and negligently researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing, and marketing Paxil;

(b)     Failing to fully disclose the results of the testing and other information in its possession regarding the possibility that Paxil can interfere with the proper development of an unborn fetus;

(c)     Failing to continually monitor, test and analyze data regarding safety, efficacy and prescribing practices of its marketed drugs, including Paxil;

(d)     Being careless and negligent in that GSK knew or should have known that Paxil was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

(e)     Negligently and carelessly failing to adequately warn the medical community, the general public and Plaintiffs of the dangers of using Paxil during pregnancy;

5

(f)   Negligently and carelessly representing that Paxil was safe for use during pregnancy, when in fact, GSK knew or should have known that it was unsafe for this use;

(g)   Negligently and carelessly promoting Paxil as safe and effective for use with pregnant women when, in fact, it was unsafe;

(h)   Negligently and carelessly failing to act as a reasonably prudent drug manufacturer;

(i)   Negligently and carelessly over-promoting Paxil in a zealous and unreasonable way, without regard to the potential danger that it poses for an unborn fetus;

(j)   GSK promoted Paxil for use with pregnant women despite the fact that GSK knew or should have known that Paxil is associated with an increased risk of congenital abnormalities and pulmonary disorders.

21.   Furthermore, GSK's negligence was an un-excused breach of statutory duty established by federal regulations because Plaintiffs have suffered from the kind of harm the regulations were designed to prevent and Plaintiffs are members of the particular class of persons that those regulations were set out to protect.

22.   At all times herein mentioned, upon information and belief, the above-described culpable conduct by GSK was a proximate cause of Plaintiffs' injuries. GSK knew or should have known that Paxil is dangerous and unsafe for pregnant women and the developing fetus.

23.   The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general

6

and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

24.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

25.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial, and other costs pertaining to their Decedent's death in an amount to be ascertained.

26.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

27.    The forgoing actions of the Defendant were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

///

///

///

7

## COUNT II

## NEGLIGENT PHARMACO-VIGILANCE

28.   Plaintiffs repeat and reiterate the allegations set forth above.

29.   GSK has an ongoing duty of pharmaco-vigilance.  As part of this duty, GSK is required to continually monitor, test and analyze data regarding the safety, efficacy and prescribing practices of its marketed drugs, including Paxil. GSK continually receives reports from its own clinical trials, practicing physicians, individual patients and regulatory authorities of adverse events that occur in patients taking Paxil and its other marketed drugs.  Furthermore, GSK continues to conduct clinical trials for its marketed drugs long after the drug is approved for use. GSK has a duty to inform doctors, regulatory agencies and the public of new safety and efficacy information it learns, or should have learned, about its marketed drugs once that information becomes available to GSK, whether through GSK clinical trials, other outside sources or pharmaco-vigilance activities. Specifically, when GSK learns, or should have learned, of new safety information associated with its marketed drugs, it has a duty to promptly disseminate that data to the public. GSK also has a duty to monitor epidemiological and pharmaco-vigilance data regarding its marketed drugs and promptly report any safety concerns that arise through epidemiologic study or data.

30.   GSK breached its duty with respect to Plaintiffs.  GSK, through various sources, including but not limited to, clinical trials and other adverse event reports, learned that there was a substantial risk of congenital birth defects, heart defects, PPHN and other related conditions, associated with Paxil use during pregnancy and failed to inform doctors, regulatory agencies and the public of this risk. GSK had the means and the resources to perform its pharmaco-vigilance duties for the entire time Paxil has been on the market in the United States.

31.   The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained pecuniary

8

loss resulting from the pain and suffering caused by their congenital birth defects, heart defects, PPHN and/or other related conditions, by the surgeries and procedures they have already undergone, and the surgeries and procedures that they will need to undergo in the future, as well as their inability to enjoy their life as a normal child without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

32.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

33.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

34.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

35.     The forgoing actions of the Defendant were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT III

## STRICT LIABILITY

36.   Plaintiffs repeat and reiterate the allegations set forth above.

37.   GSK manufacturers and/or supplies Paxil and is strictly liable to Plaintiffs for designing, creating, manufacturing, marketing, labeling, distributing, selling and placing into the stream of commerce the product Paxil.

38.   The product Paxil, manufactured and/or supplied by GSK, was defective in design or formulation, in that, when it left the hands of the manufacture and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other antidepressants.

39.   The product, Paxil, that was manufactured and/or supplied by GSK, was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

40.   The product Paxil, manufactured and/or supplied by GSK, was defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created, among other things, when taken during pregnancy, a significant increased risk of congenital birth defects, heart defects, PPHN and/or other related conditions and abnormal development of the unborn child and GSK failed to adequately warn of said risks.

41.   The Paxil that was manufactured and/or supplied by GSK was defective due to inadequate pre-market testing.

42.   The Paxil that was manufactured and/or supplied by GSK was defective due to GSK's failure to provide adequate initial warnings and post-marketing warnings or instruction after GSK knew or should have known of the risk of increased risk of congenital birth defects, heart

10

defects, PPHN and/or other related conditions and abnormal development of the unborn child from the use of Paxil during pregnancy and continued to promote the product.

43.   The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

44.   As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

45.   As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

46.   As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

11

47.   The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT IV

### FAILURE TO WARN
(Restatement Second of Torts §388)

48.   Plaintiffs repeat and reiterate the allegations set forth above.

49.   At all times herein mentioned, Paxil was unsafe for use by pregnant women and GSK knew or should have known that said product was unsafe.

50.   At all times herein mentioned, using Paxil during pregnancy was associated with a significantly increased risk of serious congenital birth defects, heart defects, PPHN and/or other related conditions and GSK knew or should have known that said product is unsafe when taken during pregnancy because of the said effects.

51.   At all times hereinafter mentioned and before the Mother Plaintiffs' ingestion of Paxil during their pregnancy, neither members of the medical community nor members of the general public knew the dangers existed with respect to Paxil's association with congenital birth defects, heart defects, PPHN and/or other related conditions.

52.   The Mother Plaintiffs used Paxil in the manner in which GSK intended it to be used.

53.   The Mother Plaintiffs used or otherwise ingested Paxil in the amount and manner and for the purpose recommended by GSK.

54.   At all times material hereto, U.S.-marketed Paxil was not accompanied by complete and proper warnings for safe, informed use. Specifically, the labeling accompanying Paxil did not warn physicians in general, or Plaintiffs in particular, of the dangers inherent in its use, particularly of the drug's association with congenital birth defects, heart defects, PPHN and/or other related

conditions. Further, the labeling failed to adequately inform physicians in general, or Plaintiffs in particular, of Paxil's association with a significantly increased risk of congenital birth defects, heart defects, PPHN and/or other related conditions if a woman ingests Paxil during her pregnancy and oversold Paxil's benefits, thus depriving physicians of necessary information needed to perform an adequate risk/benefit analysis. Furthermore, GSK failed to adequately warn doctors and the medical community of this dangerous risk using the other mediums at its disposal, including, but not limited to, medical journal articles, sales representatives, Dear Doctor letters, presentations, conferences, medical school information and all of its promotional material and activities.

55.    GSK promoted and maintained Paxil on the market with the knowledge of Paxil's unreasonable risk to the public in general and specifically to Plaintiffs.

56.    Paxil, as used by the Mother Plaintiffs during their pregnancy, was defective and unreasonably dangerous when sold by GSK, who is liable for the injuries arising from its manufacture and the Mother Plaintiffs' use.

57.    The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

58.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

13

59.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss if their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

60.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

61.    The forgoing actions of the Defendant were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNTS V & VI

## BREACH OF EXPRESS AND IMPLIED WARRANTY

62.    Plaintiffs repeat and reiterate the allegations set forth above.

63.    At all times hereinafter mentioned, upon information and belief, GSK, by directly and indirectly advertising, marketing and promoting Paxil for the treatment of women during pregnancy and by placing this drug in the stream of commerce knowing that Paxil would be prescribed to pregnant women in reliance upon the representations of GSK, expressly warranted to all foreseeable

users of the drug, including the Mother Plaintiffs, that Paxil was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

64.    GSK impliedly warranted in manufacturing, distributing, selling, advertising, marketing and promoting Paxil to all foreseeable users, including the Mother Plaintiffs, that Paxil was safe and effective for the purposes for which it had been placed in the stream of commerce by GSK, including for the treatment of pregnant women, and that Paxil was reasonably safe, proper, merchantable and fit for the intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

65.    That at all time hereinafter mentioned, the Mother Plaintiffs relied upon the aforesaid express and implied warranties by GSK.

66.    That at all times hereinafter mentioned, the Mother Plaintiffs' use of Paxil was consistent with the purposes for which GSK directly and indirectly advertised, marketed and promoted Paxil, and the Mother Plaintiffs' use of Paxil was reasonably contemplated, intended, and foreseen by GSK at the time of the distribution and sale of Paxil by GSK, and, therefore, the Mother Plaintiffs' use of Paxil was within the scope of the above-described express and implied warranties.

67.    GSK breached the aforesaid express and implied warranties because Paxil was not safe and effective for the treatment of women during pregnancy because it exposed the developing fetus to a significant risk of serious injury, and because the Mother Plaintiffs' use of Paxil for treatment during her pregnancy caused their child's congenital birth defects, heart defects, PPHN and/or other related conditions.

68.    The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital

15

birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

69.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

70.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support, and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

71.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

72.     The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

///

///

16

03/07/07  17:41 FAX 215 751 5130      GlaxoSmithKline Legal    → KAREN KARPINSKI      ☑019

## COUNT VII

### FRAUD

73.   Plaintiffs repeat and reiterate the allegations set forth above.

74.   GSK, having undertaken the manufacturing, marketing, dispensing, distribution and promotion of Paxil described herein, owed a duty to provide accurate and complete information regarding these products.

75.   GSK's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Paxil was safe for human use; had no, or no unacceptable side effects; had fewer side effects than other antidepressants; and would not interfere with daily life.

76.   On information and belief, GSK purposefully concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of Paxil.  GSK through promotional literature, deceived potential users and prescribers of said drug by relying on only allegedly positive information, including testimonials from allegedly satisfied users, and manipulating statistics to suggest widespread acceptability, while concealing, misstating and downplaying the known adverse and serious health effects.  GSK falsely and deceptively kept relevant information from potential Paxil users and minimized prescriber concerns regarding the safety and efficacy of Paxil.

77.   In particular, in the materials disseminated by GSK, GSK falsely and deceptively misrepresented or omitted a number of material facts regarding the previously stated allegations including, but not limited to, the following:

      (a)   The presence and adequacy of testing of Paxil, and

      (b)   The severity and frequency of adverse congenital birth defects, heart defects, PPHN and/or other related conditions caused by a mother taking Paxil during pregnancy.

17

78.     The aforementioned misrepresentations by GSK were reasonably relied upon by the Mother Plaintiffs and/or their prescribing physicians to their detriment.

79.     The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

80.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

81.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

82.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

18

83.   The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT VIII

## LOSS OF CONSORTIUM AND LOSS OF INCOME

84.   Plaintiffs repeat and reiterate the allegations set forth above.

85.   As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

86.   As a result of the wrongful conduct by GSK described herein, the Parent Plaintiffs of the Decedents suffered a loss of love, society, comfort, affection, companionship, services, and moral support in an amount to be determined at trial.  Furthermore, as a result of the wrongful conduct by GSK described herein, the Parent Plaintiffs suffered a loss of income in an amount to be determined at trial.

## COUNT IX

## CAUSE OF ACTION FOR SURVIVAL

87.   Plaintiffs repeat and reiterate the allegations set forth above.

88.   As a direct and proximate result of the wrongful conduct of GSK as described herein, the Parent Plaintiffs' of the Decedents children suffered great pain and suffering and other personal injury and damaged before their death.

89.   As a direct and proximate result of the conduct alleged herein, before their death, the Decedents sustained damages according to proof.

19

## COUNT X

### NEGLIGENT DESIGN

90.    Plaintiffs repeat and reiterate the allegations set forth above.

91.    GSK was the manufacturer, seller, distributor, marketer, and/or supplier of Paxil, which was negligently designed.

92.    GSK was negligent in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing and promoting Paxil which was defective and presented an unreasonable risk of harm to consumers. Paxil was negligently designed in ways which include, but are not limited to, one or more of the following:

(a)    When placed in the stream of commerce, Paxil contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

(b)    Paxil was insufficiently tested;

(c)    Paxil caused harmful side effects that outweighed any potential utility;

(d)    Paxil was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the potential risks and serious side effects associated with its use.

(e)    In light of the potential and actual risk of harm associated with Paxil's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Paxil should not have been marketed in that condition.

(f)    GSK was under a duty to act for the protection of consumers, such as Plaintiffs. GSK owed a duty to consumers to exercise reasonable care in

20

developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing and promoting Paxil, and defendant breached that duty by the conduct as alleged herein.

(g)     GSK knew or should have known that use of Paxil as intended imposed unreasonable risks to the health of consumers and the unborn fetuses of pregnant consumers. GSK knew of the grave risks caused by their products from investigation and testing performed by themselves or others, or, to the extent they did not fully know of those risks, it was because they unreasonably failed to perform appropriate, adequate and proper investigations and tests that would have disclosed those risks.

(h)     GSK's conduct described above was grossly negligent in that their actions involved willful and reckless conduct and were carried out with disregard for the unreasonable risk of Paxil and its potential for harm to consumers and the fetuses of pregnant consumers.

93.     The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

94.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

95.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial, and other costs pertaining to their Decedent's death in an amount to be ascertained.

96.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

97.    The forgoing actions of GSK were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT XI

## WRONGFUL DEATH

98.    Plaintiffs repeat and reiterate the allegations set forth above.

99.    As a direct and proximate result of the aforesaid, because of their mothers' ingestion of Paxil during their pregnancy, the Decedents developed congenital birth defects, heart defects, PPHN and/or other related conditions which caused extreme pain, suffering and mental anguish and ultimately caused their death.

100.   As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

101.   The forgoing actions of GSK were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT XII

## DAMAGES

102.   Plaintiffs repeat and reiterate the allegations set forth above.

103.   As a direct and proximate result of the negligence, strict liability, failure to warn, implied warranty, breach of express and implied warranties, fraud, as described in Counts I-XI *supra*, the Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as set forth in each Plaintiff's "Short-Form" Complaint to be filed.

104.   As a direct and proximate result of the aforesaid, Plaintiffs were obliged to spend various sums of money to treat their congenital birth defects, heart defects, PPHN and/or other

related conditions and Plaintiffs continue to be obliged for the expenses of same, as a direct and proximate result of the aforesaid, Plaintiffs have sustained a loss of earnings and earning capacity; and as a direct and proximate result of the aforesaid, the Infant Plaintiffs' enjoyment of life has been impaired and the Infant Plaintiffs' life expectancies shortened, all to Plaintiffs' great loss.

105.  As a direct and proximate result of the aforesaid, the Infant Plaintiffs have undergone great physical pain and mental anguish.

106.  As a direct and proximate result of the aforesaid, the Decedents sustained great physical pain and mental anguish as a result of their congenital birth defects, heart defects, PPHN and/or other related conditions and the surgeries and procedures they underwent between the time of their birth and their death in an attempt to treat those defects and/or conditions.

107.  As a direct and proximate result of the aforesaid, and since the Plaintiffs first learned of the Infant Plaintiffs' injuries, Plaintiffs have developed severe anxiety, hysteria or phobias, and or all of which have developed into a reasonable and traumatic fear of an increased risk of additional injury and or progression of the existing conditions(s).

108.  As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and or medical treatment.

109.  As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer a disintegrations and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

110.  As a direct and proximate result of the aforesaid, the Decedents and the Injured Plaintiffs incurred and will continue to incur hospital, nursing and medical expenses. Decedents' beneficiaries have incurred hospital, medical and funeral expenses as a result of Decedents' deaths. The Plaintiff Parents of the Decedents' bring these claims as the Personal Representatives of the Estates of the Decedents on behalf of the Decedents' lawful beneficiaries for the damages and pecuniary losses sustained by said beneficiaries.

## COUNT XII

## PUNITIVE DAMAGES

111.   Plaintiffs repeat and reiterate the allegations set forth above.

112.   The Plaintiffs are entitled to punitive damages because GSK's failure to warn was reckless and without regard for the public's safety and welfare. GSK misled both the medical community and the public at large, including the Plaintiffs herein, by making false representations about the safety of Paxil. GSK downplayed, understated and/or disregarded its knowledge of the serious effects of taking Paxil during pregnancy despite available information demonstrating that Paxil was likely to cause serious and sometimes fatal congenital birth defects, heart defects, PPHN and/or other related conditions in unborn children when taken during pregnancy.

113.   GSK was or should have been in the possession of evidence demonstrating that Paxil caused congenital birth defects, heart defects, PPHN and/or other related conditions in unborn children when taken during pregnancy. Nevertheless, it continued to market the products by providing false and misleading information with regard to safety and efficacy.

114.   GSK's above described actions were performed willfully, intentionally and with reckless disregard for the rights of Plaintiffs and the public.

115.   Accordingly, Plaintiffs seek and are entitled to punitive or exemplary damages in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against GSK as follows:

A.   For general damages in a sum exceeding this court's jurisdictional minimum;

B.   For damages for loss of consortium;

C.   For reasonable medical expenses according to proof;

D.   For all damages as allowed by law;

E.   For prejudgment interest and post-judgment interest as allowed by law;

F.   For delay damages pursuant to Pa. R.C.P. No. 238;

25

G.    For punitive and exemplary damages as allowed by law;

H.    For the costs of suit herein incurred; and

I.    For such other and further relief as this Court may deem just and proper.

Dated: March __5__, 2007

Respectfully Submitted,

Cara Luther (P.S.B. #52545)
cluther@baumhedlundlaw.com
BAUM + HEDLUND, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, PA 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

Ronald L. M. Goldman, Esq.
rgoldman@baumhedlundlaw.com
Karen Barth Menzies, Esq.
kbmenzies@baumhedlundlaw.com
Jennifer R. Liakos, Esq.
jliakos@baumhedlundlaw.com
BAUM + HEDLUND, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: 310.207.3233
Facsimile: 310.207.4204

Clayton Clark, Esq.
Riley Burnett, Esq.
CLARK BURNETT, LLP
440 Louisiana (Lyric Center), 16th Floor
Houston, TX 77002
Telephone: 713.757.1400
Facsimile: 713.759.1217

Bryan Aylstock Esq.
AYLSTOCK, WITKIN & SASSER, P.L.C
4400 Bayau Blvd., Suite 58
Pensacola, FL 32503
Telephone: 281.272.0781
Facsimile: 850.916.7449

26

John T. Boundas, Esq.
jboundas@williamsbailey.com
WILLIAMS BAILEY, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, TX 77017-5051
Phone: 1-800-220-9341 or 713-230-2200
Fax: 713-643-6226

Matthew E. Lundy
mlundy@lundydavis.com
LUNDY & DAVIS, L.L.P.
333 N. Sam Houston Parkway East, Suite 375
Houston, TX 77060
Phone: (281) 272-0797
Fax: (281) 272-0781

*Attorneys for Plaintiff*

## JURY TRIAL DEMAND

Plaintiffs herein invoke their right to a trial by a jury of 12 persons.

Dated: March _5_, 2007

Respectfully Submitted,

_Cara J. Luther_

Cara J. Luther, Esq.

## ATTORNEY'S VERIFICATION

I, Cara J. Luther, Esq., hereby state:

1.      I am one of the Plaintiffs' attorneys in this action.

4.      I verify that the statements made in the foregoing Master Long-Form Complaint are true and correct to the best of my knowledge, information and belief; and

5.      I understand that the statements in said Complaint are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: March 5, 2007

Cara J. Luther, Esquire
Attorney ID # 52545
Baum ♦ Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

**Attorney for Plaintiffs**

# Exhibit B

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

## MARCH 2011

E-Filing Number: 1103047670

**002925**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MASON J. YUEILL | SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3007 GREEN MEADOW LANE CARY IL 60013 | ONE FRANKLIN PLAZA PHILADELPHIA PA 19102 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MICHAEL J. YUEILL | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3007 GREEN MEADOW LANE CARY IL 60013 | RECEIVED MAR 2 8 2011 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MICHELLE L. YUEILL | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3007 GREEN MEADOW LANE CARY IL 60013 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 3 | 1 | [X] Complaint [ ] Writ of Summons | [ ] Petition Action [ ] Transfer From Other Jurisdictions | [ ] Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration [ ] Jury [ ] Non-Jury [ ] Other: | [X] Mass Tort [ ] Savings Action [ ] Petition | [ ] Commerce [ ] Minor Court Appeal [ ] Statutory Appeals | [ ] Settlement [ ] Minors [ ] W/D/Survival |

CASE TYPE AND CODE

TK - MASS TORT - PAXIL-BIRTH DEFECT

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** MAR **28** 2011 **S. GARRETT** | IS CASE SUBJECT TO COORDINATION ORDER? YES   NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: MASON J YUEILL , MICHAEL J YUEILL , MICHELLE L YUEILL

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ROSEMARY PINTO | 1604 LOCUST STREET 2R PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)546-2604 | (215)546-9904 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 53114 | Rpinto@feldmanpinto.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ROSEMARY PINTO | Monday, March 28, 2011, 11:22 am |

FINAL COPY (Approved by the Prothonotary Clerk)

FELDMAN & PINTO
Rosemary Pinto, Esquire
PA Attorney ID No. 53114
1604 Locust Street, 2R
Philadelphia, PA 19103
(215) 546-2604 Telephone
(215) 546-9904 Facsimile

MOTLEY RICE LLC
Fred Thompson, III, Esquire
Kimberly D. Barone Baden, Esquire
Adrian W. Broome, Esquire
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9000 Telephone
(843) 216-9450 Facsimile

*Attorneys for Plaintiffs*

**This is Not An Arbitration Case. An Assessment of Damages Is Required.**

| | |
|---|---|
| Mason James Yueill, a Minor, by Michael J. Yueill and Michelle L. Yueill, Parents and Natural Guardians<br>3007 Green Meadow Lane, Cary, IL 60013<br><br>Plaintiffs,<br><br>vs.<br><br>SmithKline Beecham Corporation d/b/a, GlaxoSmithKline<br>One Franklin Plaza<br>Philadelphia, PA 19102-1225<br><br>Defendant. | **COURT OF COMMON PLEAS TRIAL DIVISION PHILADELPHIA COUNTY**<br><br>**MARCH 2011 TERM**<br><br>**NO. : _____**<br><br>**IN RE PAXIL PREGNANCY CASES**<br><br>**JURY TRIAL DEMANDED** |

## Notice To Defend

| NOTICE | AVISO |
|---|---|
| YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br><div align="center">Lawyer Referral and Information Service<br>Philadelphia Bar Association<br>1101 Market Street – 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-1701</div> | USTED HA SIDO DEMANDAMO/A EN LA CORTE. Si usted desea defender contra las demandas puestas en las siguientes páginas, usted tiene que tomar acción dentro de veinte (20) días después que esta demanda y Aviso es servido, con entrando por escrito una apariencia personalmente o por un abogado y archivando por escrito con la Corte sus defensas o objeciones a las demandas puestas en contra usted. Usted es advertido que si falla de hacerlo el caso puede proceder sin usted y una sentencia puede ser entrado contra usted por la Corte sin más aviso por cualquier dinero reclamado en la Demanda o por cualquier otro reclamo o alivio solicitado por el Demandante. Usted puede perder dinero o propiedad o otros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VIYA EN PERSONA OR LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br><br><div align="center">ASOCIACIÓN DE LICENCIADOS DE FILADELFIA<br>SERVICIO DE REFERENCIA E INFORMACIÓN LEGAL<br>1101 Market Street – 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-1701</div> |

Case ID: 110302925

**FELDMAN & PINTO**
Rosemary Pinto, Esquire
PA Attorney ID No. 53114
1604 Locust Street, 2R
Philadelphia, PA 19103
(215) 546-2604 Telephone
(215) 546-9904 Facsimile

**MOTLEY RICE LLC**
Fred Thompson, III, Esquire
Kimberly D. Barone Baden, Esquire by
Adrian W. Broome, Esquire
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9000 Telephone
(843) 216-9450 Facsimile

*Attorneys for Plaintiffs*

**This is Not An Arbitration Case. An Assessment of Damages Is Required.**

| | |
|---|---|
| Mason James Yueill, a Minor, by Michael J. Yueill and Michelle L. Yueill, Parents and Natural Guardians<br>3007 Green Meadow Lane, Cary, IL 60013<br><br>Plaintiffs,<br><br>vs.<br><br>SmithKline Beecham Corporation d/b/a, GlaxoSmithKline<br>One Franklin Plaza<br>Philadelphia, PA 19102-1225<br><br>Defendant. | **COURT OF COMMON PLEAS TRIAL DIVISION PHILADELPHIA COUNTY**<br><br><br>**MARCH 2011 TERM**<br><br>**NO. :** _____<br><br>**IN RE PAXIL PREGNANCY CASES**<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION SHORT-FORM COMPLAINT
## FOR PAXIL PREGNANCY CASES

Pursuant to the Order by the Honorable Paul P. Panepinto, Philadelphia County Court of

Common Pleas, the following Short Form Complaint is utilized in this mass tort action for cases

alleging that a child suffers from a congenital birth defect, from Persistent Pulmonary

Hypertension of the Newborn ("PPHN"), or other related or similar conditions,  as a result of the

child's mother ingesting the prescription medication Paxil, Paxil OS or Paxil CR ("Paxil") during

her pregnancy (hereinafter "Paxil Pregnancy Cases").  Plaintiff(s) select(s) and indicate(s) the

1

causes of action raised in his/her/their case by checking off the appropriate spaces corresponding to the causes listed herein.  In the event that a cause not listed herein is being raised, or where a claim requires, pursuant to Pennsylvania law, specific pleading or case-specific facts, Plaintiff(s) shall add and include said cause or said pleading or facts by way of submitting a Supplemental Short Form Complaint as approved by the Court's Case Management Order.

1.  Plaintiff, Mason James Yueill, a minor, by Michael J. Yueill and Michelle L. Yueill, Parents and Natural Guardians, against GSK.

2.  A.  Minor Plaintiff:

| | |
|---|---|
| Name: | Mason James Yueill |
| Place of Birth | Lincoln, Nebraska |
| State of Residence: | Illinois |
| Date of Birth: | 11-24-04 |
| Date of Death: | Not applicable |

B.  Guardian for Minor Plaintiff:

| | |
|---|---|
| Name: | Michelle L. Yueill and Michael J. Yueill |
| State of Residence: | Illinois |
| Relationship to Minor Plaintiff: | Parents |

C.  Mother of Minor Plaintiff, Individually:

| | |
|---|---|
| Name: | Michelle L. Yueill |
| State of Residence: | Illinois |

2

D.   Father of Minor Plaintiff, Individually:

Name:                        Michael J. Yueill

State of Residence:   Illinois

E.   Wrongful Death Beneficiaries and/or Personal Representative of Estate of

[Not Applicable], Minor Plaintiff, Deceased.

Name:                        Not Applicable

State of Residence:   Not Applicable

Name:                        Not Applicable

State of Residence:   Not Applicable

3.   Minor Plaintiff's mother ingested the following drugs relevant to this action for

the described period:

Paxil                      ☐

Paxil CR                 ☒

Paxil Oral Suspension    ☐

Dose (if known):              Paxil CR 12.5 mg/increased to 25 mg

Reason for prescription (if known):   Anxiety

4.   The prescribing physician was:        Michael P. Martin, M.D.

5.   Minor Plaintiff was born with the following conditions:

Bicuspid aortic valve, pulmonary stenosis and other congenital malformations and

conditions that may be accidentally omitted, conditions Plaintiff is unaware of, or

conditions not yet diagnosed.

3

Case ID: 110302925

6.       Plaintiff is an individual residing in Illinois and claims damages as a result of his

mother's ingestion of Paxil during her pregnancy.

7.       The following claims are asserted herein:

| | | |
|---|---|---|
| ☒ | Count One: | Breach of Express Warranty |
| ☒ | Count Two: | Breach of Implied Warranty |
| ☒ | Count Three: | Fraud |
| ☒ | Count Four: | Intentional Infliction of Emotional Distress |
| ☒ | Count Five: | Loss of Consortium |
| ☒ | Count Six: | Negligence |
| ☒ | Count Seven: | Negligence Per Se |
| ☒ | Count Eight: | Negligent Pharmacolvigilance |
| ☒ | Count Nine: | Failure to Warn |
| ☒ | Count Ten: | Negligent Misrepresentation |
| ☒ | Count Eleven: | Punitive Damages |
| ☒ | Count Twelve: | Strict Products Liability |
| ☐ | Count Thirteen: | Survival/Survivorship Action |
| ☒ | Count Fourteen: | Violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law |
| ☐ | Count Fifteen: | Wrongful Death |
| ☒ | Count Sixteen: | Loss of Income |
| ☒ | Count Seventeen: | Medical Expenses |
| ☒ | Count Eighteen: | Design Defect |

Respectfully Submitted,

By:      /s/ Rosemary Pinto
         **FELDMAN & PINTO**
         Rosemary Pinto, Esquire
         Attorney I.D. No. 53114
         1604 Locust Street, 2R
         Philadelphia, PA 19103
         (215) 546-2604 Telephone
         (215) 546-9904 Facsimile

         **MOTLEY RICE LLC**
         Fred Thompson, III, Esquire
         Kimberly D. Barone Baden, Esquire
         Adrian W. Broome, Esquire
         28 Bridgeside Boulevard
         Mount Pleasant, SC 29464
         (843) 216-9000 Telephone
         (843) 216-9450 Facsimile

Case ID: 110302925

If additional counts are alleged, the specific facts supporting these allegations must be pleaded by the plaintiff in the manner complying with the requirements of the Pennsylvania Rules of Civil Procedure on a Supplemental Short Form Complaint attached to this Short Form Complaint.

Case ID: 110302925

**ATTORNEY'S VERIFICATION**

I, Rosemary Pinto, hereby state:

1.     I am one of the Plaintiff's Attorneys in this action;

2.     I submit that, pursuant to Pa. R.C.P. No. 1024, I am a person having sufficient

knowledge and belief to verify this pleading.

3.     Plaintiffs are outside the jurisdiction of this Court and the verifications cannot be

obtained within the time allowed for filing.

4.     I verify that the statements made in the foregoing CIVIL ACTION SHORT

FORM COMPLAINT  are true and correct to the best of my knowledge,

information and belief, and;

3.     I understand that the statements in the foregoing CIVIL ACTION SHORT FORM

COMPLAINT are made subject to the penalties of 18 PA. C.S.A. § 4904 relating

to the unsworn falsification to authorities.


Date:  March 28, 2011                        /s/ Rosemary Pinto
                                             Rosemary Pinto

Case ID: 110302925

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MONROE, JR.
and ALVINIA MONROE

      Plaintiffs

    vs.

SMITHKLINE BEECHAM CORPORATION,
d/b/a GLAXOSMITHKLINE; and
GLAXOSMITHKLINE LLC,

      Defendants.

: : : : : : : : : : : : :

CIVIL ACTION

No. 10-cv-02140

**ORDER**

AND NOW, this 20th day of July, 2010, upon consideration of Defendants' Motion for Relief from Order (Doc. No. 16), Plaintiffs' Response in Opposition to Defendants' Motion for Relief (Doc. No. 8) and Defendants' and Plaintiffs' responses thereto, Defendants' request to reconsider our decision remanding this case to the Philadelphia Count Court of Common Pleas shall be GRANTED.[1]

---

[1] Under Federal Rule of Civil Procedure 60(b)(1) a district court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for a "mistake" providing the party has submitted a motion for relief within one year of the order. The decision as to whether or not to grant a Rule 60(b) motion is entirely within a district court's discretion. Ross v. Meagan, 638 F.2d 646, 648 (3d Cir. 1981). Motions for relief brought under Rule 60(b) are treated the same way as motions to reconsider. See Mash v. Twp. of Haverford Dept. of Codes Enforcement, 2007 U.S. Dist. Lexis 67265, *12-13 (E.D. Pa. 2007).

A motion to reconsider is meant to "correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). The party moving for reconsideration must base his motion on one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice." North River Ins. Co. v. Cigna Reinsurance Co., 52 F.3d 1192, 1218 (3d Cir. 1995). A motion to reconsider may address only factual or legal matters that the court may have over looked; therefore, "it is improper on a motion for reconsideration to ask the court to rethink what it already

Pursuant to this order, the Court will now consider Defendant's Motion to Transfer (Doc. No. 2), and the parties are hereby GRANTED seven (7) days from the entry of this order to file any supplemental briefs concerning Defendant's Motion to Transfer that they deem appropriate.

By the Court:

s/J. Curtis Joyner
J. Curtis Joyner, J.

---

thought through – rightly or wrongly." Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

Typically, "a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court." Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225. However, a district court may "reconsider its order of remand" if "the initial remand was not covered by [28 U.S.C.] § 1447(c)" as "the bar of [28 U.S.C.] § 1447(d) is . . . not implicated. Id. at 228.  Federal courts are "precluded by section 1447(d) from reviewing remand orders based on routine jurisdictional determinations, but [they] may review untimely remand orders that are based on procedural defects." Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 48 (3d Cir. 1995) (internal quotations omitted). A party's noncompliance with § 1441(b) is an example of a procedural defect. Id. at 51-52. Therefore, a motion to remand based on a § 1441(b) violation must be filed within 30 days of removal. Id.

In as much as Defendant's failed to timely file their response to Plaintiffs' remand motion and did not raise the time-bar until the filing of their amended response, we were not caused to calculate the number of days between removal and the motion filing date.  That failure, however, constituted error on our part.  Now that the matter has been brought to our attention, we find that Plaintiff's Motion to Remand was filed thirty-one days after Defendant's removal.  Thus, the Court's remand was not covered by § 1447(c), and as a result, we may reconsider our original order remanding this case to the Philadelphia County Court of Common Pleas. A district court does not have statutory authority to remand a case because of a procedural defect when a plaintiff has filed his motion to remand more than thirty days after removal, even if he filed the motion on the thirty-first day.  Air-Shields, Inc. v. Fullam, 891 F.2d 63, 66 (3d Cir. 1989); Ramos v. Quien, 631 F. Supp. 2d 601, 608 (E.D. Pa. 2008).  Again, Plaintiffs filed their Motion to Remand on June 10, thirty-one days after Defendants removed the case on May 10. Consequently, the Court improperly remanded this case.

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : | AVANDIA MDL 1871 2007-MD-1871 |
| | : | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | : | |
| DESJARDINS v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-04272-CMR |
| ROBBINS, v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-04626-CMR |
| WILSON v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-04643-CMR |
| NAZELROD v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-04860-CMR |
| RANDALL v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-04861-CMR |
| BEVIVINO v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | Case No. 2:10-cv-07122-CMR |

**DEFENDANT GLAXOSMITHKLINE LLC'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND**

I.    **SUMMARY OF ARGUMENT**

This Supplemental Memorandum addresses the decision in *Brewer v. SmithKline Beecham Corp.*, No. 2:10-cv-04443-GP, 2011 U.S. Dist. LEXIS 31149, at *26 (E.D. Pa. Mar. 24, 2011), in which the Honorable Timothy Savage held that GSK LLC, the defendant in these cases, is a citizen of Pennsylvania. GSK LLC respectfully submits that *Brewer* was wrongly decided, and that this Court should decline to follow it and certify the decision in these cases for interlocutory appeal.

**A.      The Citizenship Of GSK LLC Is The Critical Issue In Five Of The Six Cases**

Plaintiffs filed these six cases in the Pennsylvania Court of Common Pleas.  GSK LLC removed each case on the ground that there was complete diversity.

In five of the cases, the issue is whether GSK LLC is a citizen of Pennsylvania or of Delaware.  If GSK LLC is a citizen of Delaware, complete diversity exists and the home-state defendant rule does not require remand.  In four of these five cases (*Nazelrod*, *Robbins*, *Randall* and *Wilson*), Plaintiffs do not contest diversity, but they argue that GSK LLC is a citizen of Pennsylvania and that the home-state defendant rule in 28 U.S.C. §1441(b) requires remand.  In the fifth case (*Desjardins*), Plaintiff does contest diversity.  He alleges that he is a citizen of Pennsylvania, and that GSK LLC is also a citizen of Pennsylvania.

In the sixth case (*Bevivino*), the issue is fraudulent joinder of a Pennsylvania physician.  Plaintiff does not contest that GSK LLC is a citizen of Delaware.

**B.      The Citizenship Of GSK LLC Is Determined By The Citizenship Of Its Member, GSK Holdings, Inc., Which Is A Delaware Corporation With Its Principal Place Of Business In Delaware**

GSK LLC is a Delaware LLC.  Its sole member is GSK Holdings, Inc., a Delaware corporation.  As a holding company only, GSK Holdings has limited business activities, and those activities are directed and controlled from its Delaware nerve center.

These cases require application of three critical and (until now) settled rules:

- an LLC's citizenship is determined by the citizenship of its member(s),

- a corporation's citizenship is determined by the "nerve center" test, and

- the corporate form cannot be disregarded unless the facts justify "piercing the corporate veil."

The *Brewer* decision broke all these rules.  By improperly focusing on the relationship between GSK LLC and GSK Holdings, and the separate business activities conducted

by those separate legal entities, *Brewer* violates the Third Circuit's LLC-citizenship test and undermines the Supreme Court's decision in *Hertz Corp v. Friend*, 130 S.Ct. 1181 (2010).  In *Hertz*, the Supreme Court adopted  the "nerve center" test for the purpose of bringing "administrative simplicity" to the task of determining where a corporation has its principal place of business.  GSK submits that *Brewer* is incorrect for two reasons.

First, the *Brewer* court erred by refusing to apply the settled rule requiring it to look *only* to the citizenship of the LLC's sole member, GSK Holdings.  Instead, the court created an entirely new rule, which was based on an incorrect premise that contravenes Delaware corporate law – namely, that GSK Holdings had allegedly "delegated" to the LLC's directors and officers its right to manage and control the business of the LLC.  This finding effectively disregarded GSK Holdings' separate corporate form from GSK LLC.  Ultimately, the court based its decision not on the citizenship of the LLC's member, but on the nerve center of the LLC itself.  *Brewer* cites no authority for this novel approach, which conflicts with settled law.

Second, when it did consider the citizenship of GSK Holdings, the *Brewer* court did not faithfully apply the *Hertz* nerve center test, which required it to determine the place from which the directors and officers actually direct and control the activities of GSK Holdings.  Instead, the court focused on certain "post-discovery conduct" that it said "smacks of jurisdictional manipulation," along with irrelevant business activities.  The court's suggestion of "jurisdictional manipulation" is misplaced.  There is no dispute that, *in reality*, GSK Holdings was keeping records in Delaware, meeting through its directors in Delaware, and maintaining its general office and an address in Delaware.  But certain by-laws and contracts incorrectly suggested otherwise and, once discovered, corrective action was promptly taken.  The by-laws and contracts were not changed to create the appearance that GSK Holdings was even more entrenched in Delaware.  Rather, they were *corrected* to reflect the *actual business practices* of GSK Holdings and GSK

-3-

LLC. That is responsible business – not manipulation. And the *Brewer* court's belief that GSK

Holdings conducts only limited activities in Delaware does not change the fact that those activities

point to Delaware as the nerve center. After all, GSK Holdings is a *holding* company. The fact

that, like many holding companies, GSK Holdings has limited functions does not make it

illegitimate or justify treating it as an "artifice," as the *Brewer* court did.

GSK LLC asks that the Court certify its ruling for interlocutory appeal. The ruling

in *Brewer* contradicts *White v. SmithKline Beecham Corp.,* No. 10-2141, 2010 U.S. Dist. LEXIS

79520 (E.D. Pa. Aug. 6, 2010) and *Hoch v. Eli Lilly & Co.,* 736 F. Supp. 2d 219 (D.D.C. 2010).

*Brewer* could not be appealed, but the Court of Appeals should have a chance to review the split

of authority that now exists in this District, and so GSK LLC asks the Court to deny Plaintiffs'

motions for remand and to certify its ruling for interlocutory appeal. GSK LLC also respectfully

requests that this Court grant oral argument on the motions.[1]

## II.    ARGUMENT

### A.    The *Brewer* Court's Novel "Delegation Test" Is Contrary To Settled Law For Determining The Citizenship Of Limited Liability Companies.

The citizenship of an LLC is determined by the citizenship of its members.

*Zambelli Fireworks Mfg. Co., Inc. v. Wood,* 592 F.3d 412, 418-20 (3d Cir. 2010). The citizenship

of GSK LLC's sole member, GSK Holdings, is in turn determined by the nerve center test because

GSK Holdings is a corporation. *Hertz Corp. v. Friend,* 130 S. Ct. 1181, 1192-94 (2010). The

*Brewer* court's decision, however, created a new rule based on an incorrect perception that it was

presented with a "unique" circumstance or an "anomaly" because GSK Holdings was a holding

company organized as a corporation, which owned GSK LLC, a separate limited liability

---

[1] This Court is not precluded from revisiting the issue of GSK LLC's citizenship as a result of Judge Savage's decision in *Brewer.* That order is not entitled to preclusive effect because it is not appealable. *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 646-47 (2006); *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 360 n.6 (3d Cir. 1999).

operating company. The *Brewer* court went on to apply a novel test where the holding company is

the sole member of a manager-managed LLC, and then compounded its error by announcing a

finding that is inconsistent with Delaware corporate law – that GSK Holdings had "factually and

legally delegated the vast majority of its decision-making to LLC's officers and directors – the

managers of LLC – who operate from Philadelphia." *Brewer* 2011 U.S. Dist. LEXIS 31149, at

*26.

The *Brewer* court's approach is not consistent with *Hertz*, *Zambelli*, or the

language of 28 U.S.C. § 1332, none of which creates or implies a rule treating a holding company

like GSK Holdings differently from other corporations. The court's approach led to its erroneous

conclusion: "Because LLC's business of pharmaceutical and consumer healthcare is directed,

controlled and coordinated from Philadelphia, and LLC is the primary part of Holdings's business,

Holdings's "nerve center" is in Philadelphia where its principal place of business is located."

*Brewer*, 2011 U.S. Dist. LEXIS 31149, at *27.

**1.    GSK Holdings did not "delegate" to the LLC's managers its authority
to operate GSK LLC's business.**

The *Brewer* rule rests on an incorrect premise – that, under Del. Code Ann. tit. 6, §

18-407, GSK Holdings "delegated" to the LLC's managers and officers its right to control and

operate the LLC's business. *Brewer,* 2011 U.S. Dist. LEXIS 31149, at *5. GSK LLC was *formed*

as a manager-managed LLC by its operating agreement pursuant to Delaware law. Del. Code

Ann. tit. 6, § 18-402. That law contemplates this structure and states that if an LLC agreement

"provides for the management ... of a [LLC] by a manager, *the management of the [LLC]*, to the

extent so provided, *shall be vested in the manager*." *Id.* (emphasis added). Thus, under Section

18-402, the original authority to manage GSK LLC was *vested in the managers of GSK LLC*.

GSK Holdings, as the member of a manager-managed LLC, did not have the authority to manage

the LLC, but instead, had the right to appoint and remove GSK LLC's managers. Because GSK Holdings did not have the right to manage GSK LLC's business, it could not have *delegated* that right.

Brewer found that GSK Holdings "delegated its rights and powers to manage and control the business of the [LLC] to [GSK LLC's] directors and officers." *See Brewer*, 2011 U.S. Dist. LEXIS 31149, at *23. But read correctly, Section 18-407 authorizes the *manager* of a manager-managed LLC to delegate such manager's rights, and the *member* of a member-managed LLC to delegate such member's rights.[2] No delegation by GSK Holdings occurred under Section 18-407. Thus, the premise of the *Brewer* rule is factually flawed. The court should have applied the nerve center test to GSK Holdings and not to an LLC to which GSK Holdings had not delegated management rights.

### 2. *Zambelli* required the *Brewer* court to limit its analysis to the citizenship of GSK LLC's sole member.

Under *Zambelli*, the *Brewer* court was required to base its decision on the citizenship of GSK Holdings alone. *Brewer* did not follow this rule, instead looking to both entities by claiming to analyze GSK Holdings "in the context of its dual role as a holding corporation *and as the sole member of LLC*," by virtue of a novel "delegation" test. *Brewer*, 2011 U.S. Dist. LEXIS 31149, at *16. That is, it took the position that, under some circumstances, the LLC rule from *Zambelli* and the corporate rule from *Hertz* "meld" together into an entirely new rule. *Id.* at *24. In fact, these two decisions set out *two distinct, co-existing rules*, both of which

---

[2] Del. Code Ann. tit. 6, § 18-407 provides that "a member or *manager* of a [LLC] has the power and authority to delegate to 1 or more other persons the member's *or manager's, as the case may be*, rights and powers to manage and control the business and affairs of the [LLC] . . . ." Del. Code Ann. tit. 6, § 18-407 (emphasis added).

apply (separately) in this case, and there is no authority for "melding" them.[3]  Rather, "the

citizenship of unincorporated associations [such as LLCs] must be traced through however many

layers of partners or members there may be" in order to determine citizenship.  *Zambelli*, 592 F.3d

at 420 (quoting *Hart v. Terminex Int'l.*, 336 F.3d 541, 543 (7th Cir. 2003)).  The Supreme Court

"flatly rejected arguments in favor of extending the rule of corporate citizenship to analogously

formed business entities" like LLCs over 20 years ago.  *Zambelli*, 592 F.3d at 419 (quoting

*Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990) (holding that the rules established for

corporations "must not be extended")).  No authority exists to support a special rule when the LLC

is owned by a holding company.

  The *Brewer* court chose to ignore *Zambelli*'s mandate, finding instead that it was

somehow presented with a "unique circumstance" or an "anomaly."  2011 U.S. Dist. LEXIS

31149, at *24, 26.  But holding companies are commonly the sole members of operating LLCs

because single-member LLCs provide certain advantages from a tax and business planning

perspective.  *See, e.g.*, Daniel S. Kleinberger and Carter G. Bishop, *The Single-Member Limited

Liability Company as Disregarded Entity:  Now You See it, Now You Don't*, Wm. Mitchell Coll.

of Law Research Paper, , No. 2010-04 (2010), at 3, *available at* http://ssrn.com/abstract=155901

(Exhibit A) ("the single-member LLC has become a centrally important aspect of LLC law and

practice").  The single-member LLC is designed to create a unified entity for tax purposes, but

separate entities for liability purposes.  *See, e.g.*, Larry E. Ribstein and Robert R. Keatinge,

*Limited Liability Companies* §2.32 (2010) (Exhibit B) (explaining that single-member LLCs are

"disregarded" for tax purposes and effective as liability-limiting subsidiaries); Robert W. Wood,

*Limited Liability Companies:  Formation, Operation, and Conversion* §6.09 (3d. ed. 2010)

---

[3] GSK LLC submits that, rather than "meld" *Hertz and Zambelli*, the *Brewer* court more simply applied *Hertz* to an LLC without regard to *Zambelli's* prohibition of exactly that.

(Exhibit C) (listing advantages of single-member LLCs, the "principal" one of which is "limited liability without corporate tax"). This corporate structure is not an "artifice."

The test of "citizenship" under 28 U.S.C. § 1332 is the same for holding companies as it is for any other corporation. This test has been applied to holding companies both pre- and post-*Hertz. See, Astras Oil Trading, NV v. Petrobas America, Inc.*, Civ. A. No. H-09-1274, 2010 U.S. Dist. LEXIS 78573, at *22 (S.D. Tex. Aug. 4, 2010) (applying *Hertz*'s nerve center test to a holding company and determining its principal place of business to be "where its sole officer and CEO . . . implements, directs, controls, and coordinates" the holding company's business activities); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (pre-*Hertz* case noting that holding company was sole member of defendant LLC and that citizenship of that holding company determined citizenship of the LLC); *Topp v. CompAir, Inc.*, 814 F.2d 830 (1st Cir. 1987) (pre-*Hertz* case using nerve center test to analyze holding company defendant's citizenship under 28 U.S.C. §1332). Contrary to *Brewer*'s finding, there is no unique circumstance or anomaly requiring a new rule here.

### 3.   *Brewer's* "delegation" test directly conflicts with *Hertz.*

Under the well-settled test for LLC citizenship, the *Brewer* court should have looked solely to the citizenship of the LLC's member, GSK Holdings, not to the nerve center of the LLC itself. The *Brewer* court's approach is contrary to *Hertz,* which stresses the importance of "administrative simplicity," "greater predictability," and a "single, more uniform interpretation" of the jurisdictional statute. *Hertz,* 130 S. Ct. at 1192-94.

Under the *Hertz* "nerve center" test, a court is to determine the location from which a corporation's officers and directors "direct, control, and coordinate" its activities. *Hertz,* 130 S. Ct. at 1192. As two other courts have held, GSK Holdings' activities are directed, controlled, and coordinated at meetings of its board of directors in Wilmington, Delaware, making it (and

therefore GSK LLC) a Delaware citizen.  *White v. SmithKline Beecham Corp.,* No. 10-2141, 2010

U.S. Dist. LEXIS 79520 (E.D. Pa. Aug. 6, 2010); *Hoch v. Eli Lilly & Co.,* 736 F. Supp. 2d

219(D.D.C. 2010)[4].

 The *Brewer* court conceded that GSK Holdings does the things that holding

companies normally do, and that its activities in that regard comply with Delaware law.  *Brewer,*

2011 U.S. Dist. LEXIS 31149, at *13 (recognizing that GSK Holdings is a holding company, not

an operating company).  Yet the court still focused on LLC's activities in Pennsylvania, by virtue

of its "delegation" analysis.  Instead, the *Brewer* court should have looked solely to the nerve

center of GSK Holdings *as a holding company*.  The court instead "melded" different

considerations, an approach that undermines the simplicity sought in *Hertz.*

 **4. By "melding" the two tests, the *Brewer* court effectively disregarded the
 corporate form without justification.**

 The *Brewer* court's "melded" approach to citizenship is unnecessary, as the law

already provides a rule for circumstances in which it is appropriate to "pierce the corporate veil."

*See Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.,* 461 F.2d 1140, 1142 (3d Cir.

1972) (noting that separate corporate identities must be respected so long as corporate separation

is "real and carefully maintained").  Plaintiffs did not allege that the court should pierce the

corporate veil of GSK Holdings, and Judge Savage made no such finding.

 By considering the business activities of GSK LLC together with the relationship

between it and GSK Holdings, however, the *Brewer* court improperly "melded" two separate

considerations.  *See Brewer,* 2011 U.S. Dist. LEXIS 31149, at *22 ("[W]e shall now look at what

---

 [4] *Brewer* dismisses the *White* and *Hoch* decisions because those judges did not have the benefit of the record
developed in the consolidated Paxil cases.  But the cornerstone of *Brewer's* "delegation" theory is GSK LLC's status
as a *manager-managed* LLC - something that was included in Julian Heslop's declaration and, therefore, was part of
the record before Judges McLaughlin and Lamberth.  *Brewer* does not identify the specific jurisdictional discovery
that somehow undercuts the citizenship determinations in *White* and *Hoch.*

[Holdings] does as LLC's sole member. Our examination entails looking at what LLC does for

Holdings."). In doing so, the court disregarded the distinction between the two entities as well as

authority requiring that citizenship determinations be based solely on the attributes of the *entity in*

*question*, so long as corporate formalities are maintained. *See Quaker State,* 461 F.2d at 1142

(recognizing that a subsidiary incorporated as a separate entity has a separate principal place of

business from its parent corporation);[5] *Topp,* 814 F.2d at 835 ("[S]o long as the entity's corporate

form is entitled to credibility, the nerve center test looks for the localized nerve center from which

the corporation in issue is directly run.").[6] *Brewer* looks through GSK Holdings to the operations

of GSK LLC, even though the record is devoid of any evidence that would support piercing the

corporate veil. Again, the court's novel "delegation" analysis is inconsistent with settled law and

should be rejected.

> **B.**   **In Determining The Principal Place Of Business Of GSK Holdings, The**
> ***Brewer* Court Incorrectly Took Business Activities And Post-Removal**
> **Conduct Into Account And Wrongly Characterized The Conduct And**
> **Activities As Evidence Of "Manipulation."**
>
> > **1.**   **The *Brewer* court's suggestion of post-removal "manipulation" is**
> > **irrelevant and factually unsupported.**

The *Brewer* court's references to GSK's "post-discovery . . . jurisdictional

manipulation" are unsupported. *See Brewer,* 2011 U.S. Dist. LEXIS 31149, at *29. As evidence

of "manipulation," *Brewer* pointed to the fact that GSK Holdings' by-laws once stated that GSK

---

[5] *See also, e.g., EverNu Tech., LLC v. Rohm & Haas Co.,* No. 10-2635, 2010 U.S. Dist. LEXIS 88921, at *5-6 (E.D. Pa. Aug. 26, 2010) (applying *Quaker State* and *Topp* in determining a subsidiary corporation's nerve center); *Holly Farms Corp. v. Taylor,* 722 F. Supp. 1152, 1158 (D. Del. 1989) (applying *Quaker State* and *Topp*).

[6] *See also De Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1173 (1st Cir. 1978) ("If the court may not look to the activities of a separately incorporated subsidiary for purposes of determining whether its parent is 'doing business' in a state, there is no reason to look to the subsidiary to determine whether the parent has its 'principal place of business' in that state."); *Schwartz v. Elec. Data Sys., Inc.,* 913 F.2d 279, 283 (6th Cir. 1990) (noting that every court of appeals that has considered the question has agreed that, when corporate formalities are maintained, jurisdiction over a subsidiary is determined based on the subsidiary's citizenship); *J.A. Olsen v. City of Winona, Miss.,* 818 F.2d 401 (5th Cir. 1987) (refusing to impute citizenship of a parent to the subsidiary when the two corporations were separately incorporated).

Holdings' general office shall be in Philadelphia and that its "books and papers" would be in Philadelphia, and suggested that the by-laws were amended after *Brewer* was removed to manipulate jurisdiction and strengthen the argument that Holdings' principal place of business was in Delaware. This conduct was not only "post-discovery," but was post-removal in *Brewer*, and therefore was irrelevant because the propriety of removal is determined at the time the case is removed. *See Westmoreland Hosp. Assoc. v. Blue Cross of W. Pa.*, 605 F.2d 119, 123 (3d Cir. 1979). But, more importantly, the conduct discussed in *Brewer* is not evidence of manipulation.

It is true that GSK Holdings' by-laws incorrectly stated that certain records were kept in Philadelphia, that the general office was located in Philadelphia, and that the board of directors met in Philadelphia. The uncontroverted evidence, however, showed that *in reality*, GSK Holdings' minutes had been maintained in Wilmington for nearly 10 years, the general office was actually located in Wilmington, and the directors' meetings took place in Wilmington. *See* Deposition of Julian Heslop at 156:5-157:1 (Exhibit D (filed under seal)); Deposition of Michael Corrigan at 10:17-11:3 (Exhibit E (filed under seal)); Deposition of Donald McLamb at 128:18-129:8 (Exhibit F).

After *Brewer* and the other Paxil cases were removed, GSK Holdings did not change its business practices so that it would appear to be more entrenched in Delaware. Once Julian Heslop, GSK Holdings' President, learned of the error in the by-laws during discovery, he testified on the record that he intended to correct the by-laws "as soon as possible." Heslop Dep. at 211:1-15 (Exhibit D). The by-laws were corrected so that they would accurately reflect GSK Holdings' *actual business practices*. That is neither manipulation nor evidence of manipulation. Indeed, under the *Brewer* court's reasoning, GSK Holdings would never have been able to correct its by-laws to reflect the corporation's actual business practices without it being labeled "manipulation."

*Brewer* also suggests that GSK LLC had ulterior jurisdictional motives in seeking to correct government contracts that identified GSK Holdings as a contracting party with an operational address in Philadelphia. *See Brewer*, 2011 U.S. Dist. LEXIS 31149, at *30. The actual contracting party, however, was *GSK LLC*. The contracts were not authorized by GSK Holdings, as it is not a pharmaceutical company with the capacity to carry out the contracts at issue. When this issue arose in discovery, employees of GSK LLC (the actual contracting party) simply sought to correct the contracts so that they would accurately reflect the entity that had actually contracted with the government.[7]

    2.    **The *Brewer* court's focus on GSK Holdings' business activities has no place under the nerve center test and the court's suggestion that Holdings is an "artifice to manipulate jurisdiction" is unfounded.**

In attempting to locate the nerve center of GSK Holdings, *Brewer* focused on irrelevant business activities and ignored the location at which corporate decision-making actually takes place, thereby failing to apply the *Hertz* test. *Brewer* gives significant weight to, for example, the size of the office that GSK Holdings leases in Delaware, the manner in which that office is furnished, the number of individuals employed by GSK Holdings, and the manner in which incoming calls and mail are routed. But none of these factors informs the true nerve center analysis. The *Brewer* court also found significance in the amount of time it takes GSK Holdings' directors to conduct a meeting. *Brewer,* 2011 U.S. Dist. LEXIS 31149, at *18-21. But that is of no import under *Hertz*. *See Cent. W. Va. Energy*, 2011 U.S. App. LEXIS 7557, at *15 (citing *Hertz*, 130 S.Ct. at 1193) (refusing to examine how much time corporation's officers devote to

---

[7] Even if GSK Holdings had been the contracting entity, the fact that a government contract lists a particular address does not establish that address as the corporation's nerve center. *See Hertz*, 130 S. Ct. at 1195 (rejecting suggestion that listing an address on a government form is sufficient to establish a corporation's nerve center); *see also Cent. W. Va. Energy Co, Inc. v. Mountain State Carbon, LLC*, No. 10-1486, 2011 U.S. App. LEXIS 7557, at *10 (4th Cir. Apr. 13, 2011) ("[U]nder *Hertz*, merely filing a government form listing a principal place of business, without more, would be insufficient to establish a corporation's nerve center."). For further discussion of the Fourth Circuit's opinion in *Cent. W. Va. Energy Co.*, see *infra* fn. 8.

directing its business versus that of its affiliated companies because "doing so would subvert the

Supreme Court's guiding principle in *Hertz* – establishing a simple jurisdictional rule to avoid

resource-intensive litigation").[8]

      *Brewer* argued that GSK Holdings "fits the profile of a company described by the

Supreme Court in *Hertz* as an artifice to manipulate jurisdiction." *Id.* at *29.[9]   But the fact that a

holding company's activities are limited, such that its business can be adequately conducted in

brief meetings, does not mean that an "artifice" has been created or that the "nerve center" test

does not apply to that holding company.  Nowhere did the *Hertz* Court suggest that the "nerve

center" test – which it adopted because it sought a clearer rule that would apply across the board –

is limited to corporations that, for example, provide services or manufacture and sell products.  To

the contrary, the Court rejected the "business activities" approach in large part because it required

courts to evaluate and weigh various corporate functions, as well as the fact that "corporations

come in many different forms . . . ." *Hertz,* 130 S. Ct. at 1191.  The "nerve center" test was

preferable, the Court held, because it did not require courts to weigh such functions.  *Id.* at 1194.

---

[8] In *Cent. W. Va. Energy,* the Fourth Circuit included a footnote stating that the "proliferation of complex corporate structures . . . may compel further attention to the issue of 'principal place of business' under 28 U.S.C. §1332." 2011 U.S. App. LEXIS 7557, at *16-17 n. 3.  The court included a "cf." cite to *Brewer.* The Fourth Circuit's citation in dicta to *Brewer* is not an acceptance of *Brewer's* reasoning, and even if it were construed as such, the factual and legal errors in the *Brewer* decision would entitle it to no persuasive weight.  In fact, GSK submits that the Fourth Circuit's logic in *Cent. W. Va. Energy* would compel a ruling for GSK in *Brewer* as well as these cases.  *See id.* at *4-5 (looking to LLC's members' citizenship to determine LLC's citizenship without regard to activities conducted by LLC) ; *id.* at *9-10 (focusing on place where LLC's member's corporate officers conducted oversight and strategic decision-making); *id.* at *10-11 (recognizing that addresses on a government form were irrelevant under *Hertz* test); *id.* at *11-12 (giving no weight to evidence of daily management activities in conducting *Hertz* nerve center analysis); *id.* at *15 (giving no weight and refusing invitation to examine how much time LLC's member's officers devote to member company business versus affiliated company business).

[9] The only assumption can be that GSK Holdings was an "artifice" created to manipulate GSK LLC's citizenship.  But GSK Holdings was incorporated in 1999 – nearly 10 years before GSK LLC was formed.  Moreover, it was never suggested that GSK Holdings was created to manipulate the citizenship of GSK LLC's predecessor, SmithKline Beecham Corporation.  And *Brewer* goes on to acknowledge that GSK LLC "was formed to accomplish a legitimate business purpose and not to manipulate jurisdiction for litigation purposes." *Brewer,* 2011 U.S. Dist. LEXIS 31149, at *28.  The chronology demonstrates that the *Brewer* court did not justify its basis for concluding that GSK Holdings is an "artifice to manipulate jurisdiction."

But the *Brewer* court did just that, instead of addressing the pivotal issue – the place or location at which the directors make the decisions that guide GSK Holdings' activities.

### 3.    GSK Holdings' Nerve Center is in Delaware.

The record demonstrates that GSK Holdings' limited activities as a holding company are directed, controlled, and coordinated at meetings of its board of directors in Wilmington, Delaware. All three directors have testified that GSK Holdings is controlled by actions taken by the board of directors at regular and quarterly meetings in Wilmington. *See White,* 2010 U.S. Dist. LEXIS 79520, at *8-9; *Hoch,* 736 F. Supp. 2d at 221; *see also* Heslop Dep. at 184:21-185:1; Corrigan Dep. at 24:7-13; McLamb Dep. at 128:19-129:8. As Mr. Heslop testified, to the extent that GSK Holdings receives strategic input from outside of Delaware, it comes from London – the "strategic home" of the GSK group of companies (including GSK Holdings). *See* Heslop Dep. at 167:12-22; 169:8-170:3.

In considering the nerve center of GSK Holdings, *Brewer* does not faithfully apply the straightforward test announced by *Hertz. Brewer* ignores the actual location of direction, control, and coordination of GSK Holdings' activities and, instead, focuses on irrelevant business activities and purported instances of "manipulation." Not only are those suggestions incorrect, they do not change the fact that the center of GSK Holdings' decision-making is in Wilmington, Delaware.

### C.    Brewer's New Rule Will Likely Evade Appellate Review Unless This Court Denies Remand And Certifies The Issue For Interlocutory Appeal.

An order *denying* remand, unlike a remand order, can be reviewed. And under Section 1292(b), a district judge may certify an order for review if the judge believes that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

termination of the litigation." GSK submits that this Court should deny remand here, but also certify its decision for review to the U.S. Court of Appeals for the Third Circuit.

If the *Brewer* decision is followed, GSK LLC will likely be denied access to the federal courts in Pennsylvania because of the resident-defendant rule. *Brewer* cannot be reconciled with controlling precedent from the Supreme Court and the Third Circuit, and the *Brewer* decision creates a split in authority in this District. Absent appellate review, this precise issue – the citizenship of GSK LLC – could continue to be litigated in countless remand motions in subsequent cases that will be removed to this District. Early review of this question by the Third Circuit could save tremendous resources for both the courts of this District and the litigants by settling the question – whatever the outcome – without further remand litigation.

## III.   CONCLUSION

For the above-stated reasons, GSK LLC respectfully requests that this Court decline to follow *Brewer,* deny Plaintiffs' motions to remand, and certify its decision for interlocutory review.

Pursuant to Local Rule 7.1(f), GSK LLC respectfully requests that this Court grant oral argument on the motions.

Respectfully submitted,

*/s/ Nina M. Gussack*
Nina M. Gussack
Anthony C.H. Vale
Francis X. Lane
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: April 18, 2011                    *Attorneys for Defendant GlaxoSmithKline LLC*

## CERTIFICATE OF SERVICE

I, Francis X. Lane, hereby certify that on April 18, 2011, I caused a true and correct copy of the foregoing Supplemental Memorandum in Opposition to Plaintiffs' Motions to Remand to be served upon all counsel of record via ECF and upon counsel listed below via Federal Express.

Michael B. Leh
Locks Law Firm
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
mleh@lockslawpa.com
*Attorney for Plaintiffs Desjardins, Nazelrod, Randall, Robbins and Wilson*

Kevin J. Sommar, Esquire
Sommar, Tracy & Sommar
210 South Broad Street
P.O. Box 227
Lansdale, PA 19446
Fax: (215) 368-4094
*Attorney for Plaintiff Bevivino*

George H. Knoell, III, Esquire
Kane, Pugh, Knoell, Troy & Karmer
510 Swede Street
Norristown, PA 19401
gknoell@kanepugh.com
*Attorney for Defendant William M. Lee, M.D.*

*/s/ Francis X. Lane*
Francis X. Lane